### SMOOT & SMOOT v. NELSON et al.
### (No. 12041.)

Court of Civil Appeals of Texas. Fort Worth.
Oct. 27, 1928.

John Davenport and Smoot & Smoot, all of Wichita Falls, for appellants.

Bullington, Boone, Humphrey & King and Fitzgerald & Hatchitt, all of Wichita Falls, for appellees.

CONNER, C. J. In 1918, Sam Sparks secured a permit from the state of Texas to drill for oil and gas on 981.9 acres of land along the right bank of the Red River northeast of Wichita Falls, claimed by Texas as belonging to her. Sparks subdivided the area, and one of the subdivisions of 10 acres was duly conveyed to appellee Walter Nelson. An adjoining subdivision of a like number of acres was conveyed to John C. Kay. Kay and Nelson later conveyed the several tracts owned by them to the Lone Star Refining Company, hereinafter called refining company, pooling their interest under an agreement that, wherever a well should be drilled on either tract, both were to share in the proceeds. The consideration paid and promised by the refining company for its purchase of the Kay and Nelson tracts was $20,000 in cash, an overriding royalty of one-eighth, and a bonus of $10,000 out of the first oil obtained. In this condition of affairs, the state of Oklahoma, claiming to own the land, instituted a suit against the state of Texas to recover the area included in the Sam Sparks' permit. Thereafter the United States, as-

serting ownership of the land, intervened in the suit between Oklahoma and Texas, sought and procured the appointment of a receiver, who took charge of the property involved, including among others the lots sold by Nelson and Kay, and one or more oil-producing wells that in the meantime had been drilled by the refining company. Under an act of Congress (30 USCA §§ 230–236) so authorizing, the refining company and other claimants under the Texas title were permitted to assert and prosecute their claims before the Interior Department at Washington, D. C., which finally resulted in an award in favor of the refining company of 1.9 acres of land out of the 10-acre lot formerly owned by John C. Kay, upon which a producing well had been drilled, and a further award of $250,000 in cash, presumably as the proceeds of the oil sold by the United States receiver from the well or wells drilled by the refining company. It further appears that an ancillary receiver had been appointed by the United States District Court for the Northern District of Texas, and that appellants, a practicing firm of lawyers in Wichita Falls, were employed and appeared in that case and sought to obtain a judgment against the refining company for the several $10,000 bonus moneys agreed to be paid by the refining company as part of the consideration for the purchase of the Nelson and Kay lots, as above stated. Through the efforts of appellants and another who in the meantime had been employed by Walter Nelson, the United States District Court in Texas awarded to Kay and Nelson the sum of $60,000. Kay and Nelson and a representative of the refining company later compromised their several claims by the payment of $30,000 in cash to Kay and Nelson; the check therefor being made to them jointly and deposited to their credit in a Wichita Falls bank in their joint names, and thereafter equally divided between them.

With the foregoing brief outline of the antecedent circumstances, it will be further stated that the appellants, Smoot & Smoot, instituted this action against Walter Nelson and Dave Nelson, a practicing firm of lawyers in Wichita Falls.

Appellants' original petition, filed on September 7, 1926, contained two counts. In the first count it was alleged, among other things, that:

"On or about September 1, 1923, the defendants approached plaintiffs with a view to retaining them to represent such defendants before the Federal Court and Federal Land Office and Department of the Interior and represented to plaintiffs that they were interested in the east one-half of block 3 of the Sam Sparks subdivision in Red River, and that such interest consisted of a bonus of $10,000 to be paid out of a certain part of the first oil to be produced from such property and a one-eighth royalty interest. That in return for the services of these plaintiffs in preparing, presenting and prosecuting their claim before the Federal Courts, Land Office and Department of the Interior, as found expedient, defendants offered and agreed to pay plaintiffs $5,000 out of any recovery made. * * * Plaintiffs accepted such employment and defendants agreed with plaintiffs that plaintiffs, in return for their services in preparing, presenting and prosecuting such claim, were to receive a fee of $5,000 to be paid out of any recovery had on such claim, and defendants agreed and bound themselves to pay plaintiffs such amount if a recovery was had upon such claim to the extent of $10,000.

"That thereafter plaintiffs prepared, filed and prosecuted defendants' claim before the United States Land Office and the Department of the Interior under the Act of Congress of March 4, 1923, and prepared and filed and prosecuted before the United States District Court for the Northern District of Texas such claim against the Lone Star Refining Company, in the form of a bill of intervention, and on or about November 1, 1924, procured a judgment in said court decreeing to the defendant Walter Nelson a recovery for the said bonus of $10,000 and certain royalties. That thereafter by compromise agreement with the said Lone Star Refining Company, such Nelson received $15,000 on account of said judgment, whereby defendants through and by reason of the work and services rendered by plaintiffs recovered more than the $10,000 bonus, and thereby became bound and indebted to and promised to pay plaintiffs the said sum of $5,000 with interest. That such amount became due and payable at the time defendants received payment of said $15,000 on or about March 1, 1926, and plaintiffs should be paid six per cent. interest on such $5,000 so due and owing them from and after such time and until the same is fully paid.

"That when said amount became due and many times thereafter plaintiffs have demanded payment of same, but the said defendants have failed and refused, and still fail and refuse to pay the same or any part thereof except the sum of $1,666.66, to plaintiffs' damage in the sum of $3,333.33 with interest thereon from the 1st day of March A. D., 1926, at the rate of six per cent per annum."

In the second count of the petition, after the recitation of their acceptance of employment "on a basis of receiving $5,000 out of any recovery," and after reciting that they had found an unconditional transfer from Sam Sparks, the original owner of such rights, to Walter Nelson, and an unconditional reservation of such sums and royalties to Walter Nelson, and of their confidence in and reliance upon the statements of Walter Nelson upon which they accepted the employment, further alleged that:

"They (plaintiffs) did not request a formal

contract in writing setting forth the terms of such employment, but relied upon his, the said Walter Nelson's verbal promise, jointly with defendant Dave Nelson, to pay such amount out of such recovery when made. That relying on such agreement, plaintiff entered upon such employment, prepared, filed and prosecuted such claim before the Federal Land Office and Department of the Interior and at great expense to themselves made numerous and expensive trips to Washington, D. C., and other places, and prepared copies and mailed out by registered mail to adverse claimants at great expense, numerous papers, documents, and notices. That the plaintiffs out of abundance of precaution also filed a bill of intervention before the United States District Court for the Northern District of Texas and at their own expense prosecuted the same to a successful termination and procured judgment thereon for the full amount of such bonus of $10,000 together with the royalties claimed. That the defendants furnished none of the expenses of such litigation and accepted and took full advantage of all the services rendered by the plaintiffs and expenses paid by them.

"That thereafter, such Walter Nelson delivered to plaintiffs a certain letter which purported to state the terms of such verbal agreement, but which in fact did not correctly state such terms, a copy of which is attached hereto as Exhibit 'A.' That when such letter was delivered, plaintiffs called such Nelson's attention to certain parts of such letter which might be susceptible of a double meaning, and such Nelson explained that such terms merely meant that plaintiffs were to receive $5,000 out of any recovery had provided as much as $10,000 was recovered, and was merely a confirmation of the original agreement to be used in case of death or happenings to either of the parties and that the original agreement was not affected or changed and assured plaintiffs that because of their relations as fellow attorneys the highest good faith would be observed towards plaintiffs by such defendant Nelson; and because of such assurance and the faith and confidence imposed in such Walter Nelson, plaintiffs proceeded with such original verbal agreement."

The second count further recites the recovery by the Lone Star Refining Company, and the fact of defendant's refusal to pay, and alleges:

"Plaintiffs would further show that if such letter constitutes a contract, which they deny, that the same was drawn by such Walter Nelson with a double and obscure meaning and its terms and meaning were misrepresented to these plaintiffs and the ownership and interest of such Sparks in such lease was concealed, or at least not revealed, for the purpose on the part of said Walter Nelson and his co-defendant, Dave Nelson, of deceiving and misleading plaintiffs and of inducing them to proceed with such work on a misapprehension of what they were to receive therefor and of the terms of the contract under which they were employed, and was intended to mislead, overreach and take advantage of the trust and confidence imposed in such Walter Nelson as a fellow attorney by plaintiffs. That by reason of such misrepresentation on the part of such defendants, and the imposition of defendants upon the trust and confidence of such plaintiffs, such writing and the terms thereof are null, void and of no effect so far as it may differ in meaning and construction from the verbal agreement between plaintiffs and defendants, and should be reformed and corrected so as to conform to such verbal contract; and that plaintiffs should recover hereunder for the full amount of $5,000 with six per cent interest from March 1st, 1926, when it should have been paid, less the tendered amount of $1,666.66.

"Wherefore, premises considered, plaintiffs pray for service in terms of law, for reformation and correction of such instrument and judgment for such amount of $3,333.33 with interest as prayed for and costs of court and general and special relief."

The letter, referred to in plaintiffs' petition as Exhibit A, reads as follows:

"Messrs. Smoot & Smoot, Wichita Falls, Texas—Dear Sirs: We originally owned an oil and gas lease covering lot No. 6 in block No. 3 in the Sam Sparks subdivision in Red River; said lot being divided into two portions and the east half having been conveyed to Walter Nelson and the West half to Jno. C. Kay. These tracts were transferred and assigned to the Lone Star Refining Company, and as a part of the consideration, the said Nelson was to receive $10,000 from the proceeds of the first oil produced on the said east half and also one-eighth royalty; and the said Kay was to receive $10,000 from the proceeds of the first oil produced on the said west half and also a royalty of one-eighth. This land is in the disputed area now under control of the Federal Receiver, and the interest of all parties will be determined by the Department of the Interior.

"This is to confirm our verbal agreement with you made a few days ago in which it was agreed that for your services in representing us in the recovery of the interest claimed by us in the above described tract of land, you are to receive half of our interest in the $10,000 to be paid out of the first oil under such contract as above set out, it being understood, however, that this agreement is not binding as to any interest Sam Sparks may have in said claim.

"The above agreement applies only to the $10,000 from the first oil produced as above set out and does not include any part of our royalty interest in this land.

"Walter Nelson."

The defendants answered by a general demurrer, a general denial, and specially denied that they, either by word of mouth, letter, or insinuation, misrepresented or misled or in anyway deceived plaintiffs, but, on the contrary, averred that at all times they had acted in good faith, and further alleged that they had believed that the plaintiffs were acting in good faith until "finally it became apparent to these defendants that plaintiffs were not bringing the cause to an issue and that these defendants, as well as John C. Kay, were forced and compelled to seek other counsel to carry out their contract that they had made with these plaintiffs on or about October 20, 1923, and the expense of other counsel was $2,225.00."

The defendants further alleged that defendant Walter Nelson, in connection with John C. Kay, employed the plaintiffs and agreed as "shown by Exhibit A attached to this answer." The exhibit here referred to is the same as that attached to plaintiffs' petition as an exhibit, except that, instead of it being signed by Walter Nelson alone, it is also signed by John C. Kay, purporting to be a joint act of the two. Further circumstances and defensive allegations are made in said second count, by reason of which it was urged that the $1,666.66 already paid to the plaintiffs was all that they were entitled to receive, under the written agreement and pooling contract between Kay and Walter Nelson.

To the answer of defendants, the plaintiffs filed no reply, and the court, after having heard the evidence, submitted the case to a jury, which, in answer to special issues, found that the plaintiff George A. Smoot and defendant Walter Nelson agreed that the compensation for plaintiffs' services should be the amount as described in the letter, dated October 20, 1923, written by Walter Nelson and John C. Kay to Smoot & Smoot; and that Smoot & Smoot, or one of them, performed the legal services that they contracted to perform in the prosecution of the claim of Walter Nelson. Upon these findings the court entered judgment in favor of defendants, and plaintiffs have duly prosecuted this appeal.

We have concluded that, regardless of the several questions presented in the briefs of appellants, the judgment must be affirmed, on the ground that no other judgment could have been properly rendered on the state of the pleadings, the undisputed evidence, and the verdict of the jury, which is not questioned.

In Harrison v. Nixon, 9 Pet. 483, 9 L. Ed. 201, by the Supreme Court of the United States, it is held that every bill must contain in itself sufficient matter of fact, per se, to maintain the case of the plaintiff, and that the proofs must be according to the allegations of the parties, and, if the proofs go to matters not within the allegations, the court cannot judicially act upon them as a ground for decision, for the pleadings do not put them in contestation.

In Clonts v. Johnson, 294 S. W. 844, by Section B of our Commission of Appeals, the proposition that pleadings are essential to recovery and determine the extent of the possibility of recovery was announced. These propositions we think will not be questioned, and the pleadings of plaintiffs in this case are not susceptible of any other construction than that the contract of employment of appellants was an oral agreement made by Walter Nelson for the specified sum of $5,000, and that the written letter, signed by Walter Nelson and attached to plaintiff's petition as an exhibit, was, on the grounds alleged, to be reformed and construed as of the same effect as the oral agreement. As stated, these allegations are denied by the defendants, and the plaintiffs made no reply to the denial; the issues being thus formed. The evidence and unassailed finding of the jury is to the effect that the contract was not oral, as alleged, but was that evidenced by the written agreement of Walter Nelson and John C. Kay. Such finding is fully supported by the evidence and unquestioned in this court. Or, if it could be said through any process of reasoning that plaintiffs' petition was sufficient to authorize a recovery on the written contract of Walter Nelson, attached as an exhibit to plaintiffs' petition, then it must be held that the contract declared upon is several, by a single individual, and not joint signed by two, as the evidence shows and as the jury found. In this connection it should perhaps be stated that appellants in their briefs present no proposition urging error in the failure of the court to submit issues for findings relating to their allegations, seeking to reform the written contract or for a specific finding of whether the contract was oral instead of written, nor that the court refused requested instructions that sought such findings.

In the case of Alvis v. Harris Hdw. & Furn. Co. (Tex. Civ. App.) 218 S. W. 538, it was held by the Beaumont Court of Civil Appeals that, where a plaintiff in an action commenced in justice court based his cause of action on notes, he could not recover in a county court on a liquidated account.

We quote the following from the syllabus in the case of Brinkley v. Harkins, 48 Tex. 225: "B brought suit against the heirs of D to recover land which he alleged D had purchased with money placed in his hands for that purpose, by B; the title was taken in D's name, though the petition alleged that D had promised to convey the land to B, and had died before doing so. To this a general denial was pleaded. The evidence showed that the purchase was made by D, with funds accruing from a partnership enterprise between B and D, and no settlement was shown, nor was the value of the land shown on the

trial: Held, since the evidence developed a case entirely different from that made in the pleading, judgment should have been rendered for the defendant."

In the case of Graves & Barnewall v. Boston Marine Ins. Co., 2 Cranch, 419, 2 L. Ed. 234, by the Supreme Court of the United States, it was held that the interest of a copartnership could not be given in evidence, on an averment of individual interest, nor an averment of the interest of a company be supported by a special contract relating to the interest of an individual.

In the case of Moore v. Kennedy, 81 Tex. 144, 16 S. W. 740, the following was quoted with approval from the case of McGreal v. Wilson, 9 Tex. 429: "'If there is anything settled by this court it is that the allegata and probata must correspond and agree; and no verdict or judgment can be sustained unless there has been an averment to let in such evidence. The express contract being the only one set out and averred in the petition, evidence to support an implied contract could not be received. It would be a variance from the allegata.' In that case the plaintiff had declared on an express contract to give the services of two slaves for one year, or the alternative of paying $300. The proof was that the services of such negroes were worth $150 each per year, and the recovery was on quantum meruit, there being no evidence of an express contract."

Judge Wheeler, in the case of Parker v. Beavers, 19 Tex. 407, had this to say: "There is no principle more clearly settled, than that a complainant in a court of equity, as well as law, must recover, if at all, upon the identical case on which he has based his right to a recovery in stating his cause of action."

In the case of McGreal v. Wilson, 9 Tex. 426, Judge Lipscomb said: "If there has been anything settled by this court, it is that the allegata and probata must correspond and agree; and no verdict or judgment 'can be sustained, unless there has been an averment, to let in such evidence. Mims v. Mitchell, 1 Tex. R. 443; Harrison v. Nixon, 9 Pet. 503, [9 L. Ed. 201]. The express contract being the only one set out and averred in the petition, evidence to support an implied contract, could not be received. It would be a variance from the allegata. (Story on Contracts, secs. 12, 13 and 16; Chitty on Contracts, 25; Harrison v. Nixon, 9 Pet. 503 [9 L. Ed. 201]."

In Gammage v. Alexander, 14 Tex. 414, Chief Justice Hemphill said: "This action purports to be founded on a contract; and it is a rule of pleading, as old as the science itself, that a contract, when sued upon, must be correctly stated, and if the evidence differ from the statement, the variance is fatal to the action; in other words the facts constituting the cause of action must be set forth fully and distinctly, and if not proved as laid, the foundation of the action fails, and the plaintiff cannot recover."

See, also, Riverside Lumber Co. v. Lee, 7 Tex. Civ. App. 522, 27 S. W. 161.

In 9 Cyc. p. 755, it is said: "There may be a fatal variance between the pleading and proof in respect to the parties to the contract in suit. Thus if the plaintiff declared on a joint contract of the defendants, and that offered in evidence is several, or was made by a part of the defendants only, the variance is fatal. So also a misjoinder of plaintiffs in an action ex contractu is fatal; and if they declare on a contract made with them jointly, and the proof shows a several contract with each plaintiff, a nonsuit is proper. And conversely it has been held that a joint contract cannot be given in evidence where a several contract only is alleged. Proof of a copartnership contract will not sustain allegations of an individual contract. If the plaintiff declares on a contract as originally made, and his evidence reveals that the original contract has been superseded or materially modified by a valid subsequent agreement, the variance will be fatal to a recovery."

■■ Appellants insist that the variances noted are not material, in that they neither tended to surprise nor mislead defendants, citing such cases as Jones v. Davis Motor Co. (Tex. Civ. App.) 224 S. W. 701; Nichels v. Gilmore (Tex. Civ. App.) 293 S. W. 884; Goodwin v. Abilene State Bank (Tex. Civ. App.) 294 S. W. 883. But we think these cases and principles invoked therefrom have no application here. It is to be remembered that the plaintiff made no reply to the pleadings of defendants or sought a recovery on allegations made in the defendants' answer. Not having replied, a denial of defendants' allegations must be implied by reason of the statute relating to the subject (article 2005, Rev. Stats.) and defendants' pleadings, evidence, and findings of the jury were to the effect that there was no such contract as that pleaded by the plaintiffs. This was all wholly defensive, went to the very foundation of plaintiffs' case, and was offered, not by plaintiffs, but by defendants, and received without objection. It was hence admissible under defendants' general denial in accord with the principles applied in those cases which hold that a plaintiff in trespass to try title to land may be defeated by the defendant proving an outstanding title in a person other than himself. Lamberida v. Barnum (Tex. Civ. App.) 90 S. W. 698; Mars v. Morris (Tex. Civ. App.) 106 S. W. 430. And this conclusion is not to be denied by reason of the fact that defendants in their special answer set up the written contract of Walter Nelson and John C. Kay (under which the plaintiffs sought no relief in their pleading), in view of the construction given to article 2006, Rev. Statutes, to the effect that it is permissible to plead inconsistent defenses, and that an inconsistent plea is not admissible in evidence as an admission of the plaintiffs' cause of action. Young v. Kuhn, 71 Tex. 645, 9 S. W. 860.

We finally conclude that, for the reasons noted, the judgment below should be affirmed, on the ground that no other judgment could have been properly rendered in the state of the pleadings, the undisputed proof, and the finding of the jury. In so ruling, however, we wish to add that it is without prejudice to appellants' rights, if any, to prosecute a suit founded upon the joint written contract of Walter Nelson and John C. Kay.