## EASTLAND BUILDING & LOAN ASS'N v. EASTLAND COUNTY LUMBER CO.

No. 747.

Court of Civil Appeals of Texas. Eastland.

Dec. 19, 1930.

Rehearing Denied May 15, 1931.

Turner, Seaberry & Springer, of Eastland, for appellant.

Scott, Brelsford, McCarty & Brelsford, of Eastland, for appellee.

LESLIE, J.

This is a suit by the Eastland County Lumber Company, appellee here, against the Eastland Building & Loan Association, appellant for $420, alleged to be the balance of the consideration which the association obligated itself to pay the lumber company for a $2,700 promissory note, and mechanic's and materialmen's lien securing same; $2,280 having been theretofore paid the lumber company. Trial was before the court and resulted in a judgment for plaintiff for the amount sued for, and the association prosecutes this appeal. There are no findings of fact or conclusions of law. The parties will be referred to as in the trial court.

For cause of action the plaintiff, lumber company, alleged that, by virtue of an agree-

ment between itself and the loan association, the latter became bound and obligated to pay it the sum of $2,700, upon its indorsement to said loan association of said note, together with a transfer of the lien securing the same. That such indorsement and transfer were made on or about February 14, 1929, at which time, in part performance of its contract, the association paid to the lumber company $2,280, leaving a balance of $420 due and unpaid, for which this suit was instituted.

The defendant association answered by general denial and specifically pleaded that, at the time of the transfer and assignment to it of said note and lien, there were two unpaid claims for labor and material (to R. P. Crouch for plumbing, $325, and to G. W. Sherrill for electric wiring, $95), aggregating $420; said sum was withheld by the defendant with the agreement that the lumber company would pay said outstanding claims and furnish the association with receipted bills and releases therefor; whereupon, the remaining sum of $420 was to be paid by defendant to plaintiff. The defendant further specially pleaded partial failure of consideration, and that the plaintiff was liable on its warranty, notwithstanding it indorsed the note without recourse.

The material facts out of which the lawsuit arises are: J. O. Earnest and wife, Lorena Earnest, being desirous of erecting a homestead residence on a certain tract of land in Eastland county, contracted with L. L. Willis to construct the same, according to certain plans and specifications. The consideration was paid by the owners, part in cash and the part (here involved) by a promissory note payable to the order of said Willis for $2,700. The note and lien were executed with the legal formalities necessary to the fixing of a lien as security on a homestead. The note and lien were of date December 3, 1928. Immediately, on December 6th following, the note and lien were by said Willis indorsed and transferred to the plaintiff lumber company and duly filed for registration in the county clerk's office of Eastland county on December 7, 1928.

By written instrument bearing date February 14, 1929, the lumber company transferred the note and lien to the building and loan association, and this instrument was filed for record on the 18th day of February, 1929. The note was indorsed, without recourse, by the lumber company.

After the assignment of the note and lien to the lumber company, R. P. Crouch contracted with the original contractor, L. L. Willis, for the installation of the plumbing, and G. W. Sherrill contracted with the said Willis for the electric wiring of the Earnest house. The residence was apparently completed, according to contract, plans, and specifications, the latter part of January, 1929.

On February 18, 1929, the subcontractor, Crouch, took first steps to fix a lien against the property of the owner, J. O. Earnest, for material and labor furnished by him under the contract with Willis. Due notice was served upon the owner and a sworn account was filed in the office of the county clerk on February 19, 1929. The following day G. W. Sherrill took like steps to fix a lien for his labor and material against the owner's property.

Although the original contractor, Willis, assigned and transferred the note and lien to the lumber company on December 6, 1928, and the same was, on December 7, 1928, duly recorded in the county clerk's office of Eastland county, he nevertheless proceeded with the construction of the residence, and, according to the undisputed testimony and the accounts filed by Crouch and Sherrill, it was with him that each of them contracted to furnish the labor and material, the price of which aggregates the sum here sued for, and to secure which they attempted to fix respective liens.

From these undisputed facts it clearly appears that, after December 6, 1928, the date of the transfer of the note and lien by Willis, no one furnishing labor or material for the construction of this residence, by virtue of a contract with Willis only, could fix any character of lien on the owner's property as security for such labor and material. This is the material consideration in the case, and since Crouch and Sherrill contracted with Willis at a time when the owner of the building owed him (Willis) nothing, it was not thereafter within their power to serve the owner with notice and fix a lien on his property for the price of such labor and material furnished and used by virtue of such contract with Willis. It seems to have been uniformly held in this state that, after a note secured by a lien has been transferred by the contractor to whom it was given, and under circumstances herein detailed, one furnishing labor and material to such original contractor (as did Crouch and Sherrill) cannot fix a lien against the property of the owner, and the assignee of a note and lien holds the lien as provided in the contract for the full amount of the note. Thelander v. Becker (Tex. Civ. App.) 199 S. W. 848 (writ refused); Beilharz v. Illingsworth (Tex. Civ. App.) 132 S. W. 106 (writ refused); Gordon-Jones Construction Co. v. Welder (Tex. Civ. App.) 201 S. W. 681 (writ refused).

From what has been said it follows that it is our conclusion that the note and lien were in all respects what they purported to be when assigned by the lumber company to the building and loan association, and that, in so far as the particular claims here discussed are concerned, no legal reason existed or now exists for the withholding of the unpaid balance of the amount promised by the association for the $2,700 note and here sued for.

The defendant's special defense, based upon the possibility of the Crouch and Sherrill claims being protected by liens against the owner's property, is believed to be a misapprehension of the facts and without legal foundation, since, as pointed out, said claims were at no time protected by the original contractor's lien against the owner's property, and the subsequent attempt to fix a lien against that property availed nothing.

From these conclusions we pass to an examination of the testimony and consideration of the pleadings (especially those upon which the plaintiff seeks to recover judgment herein), with the view of determining whether or not the pleadings form a sufficient basis for the judgment, and whether or not there is any evidence reasonably supporting the judgment appealed from. As stated, there are no findings of fact or conclusions of law, and the judgment of the trial court must therefore be sustained if there is testimony supporting any theory authorizing it. L. D. Powell Co. v. Lee (Tex. Civ. App.) 257 S. W. 308.

Upon an examination of the pleadings, we find them sufficient to support the judgment, and we also believe the evidence is ample to support the same.

More specifically we do not sustain the defendant's contention that the plaintiff alleged an unconditional contract with the defendant association to pay it (lumber company) $2,700 for the note and lien, and proved a conditional one to pay $2,280 for the same and the balance upon a contingency. There was evidence supporting the plaintiff's allegations of an unconditional contract to pay the $2,700 for the note and the lien, and the matters involved in the contingency were occurrences or considerations subsequent to the actual making of the contract between the parties and were in the nature of precautions or excuses for a temporary nonperformance by the defendant association. The only variance which we discover is as to the date of the oral contract alleged. There was but a slight misdescription and to be available here the point should have been raised in the trial court. Kelsey v. Myers (Tex. Civ. App.) 29 S.W.(2d) 855.

What is here said necessarily disposes of the plea of partial failure of consideration, as well as the other matters of special defense, and believing each of the propositions urged by appellant to be without merit under the facts of the case, they are overruled and the judgment of the trial court is affirmed.

FUNDERBURK, J., not sitting.

On Rehearing.

LESLIE, J.

At a former day of this term the judgment of the trial court in this cause was affirmed. On motion for rehearing we have concluded that the judgment is erroneous and that it should be reversed and remanded for a new trial for the following reasons:

Omitting formal parts and portions of the pleadings not essential to the point under consideration, it will be observed that the plaintiff's suit is upon an unconditional promise alleged to have been made by the loan association to the lumber company for the purchase of a note amounting to $2,700 and secured by a mechanics' and materialmen's lien on lot 8, block 27, Daugherty addition to the town of Eastland. The note and lien were executed by the owners, J. O. Earnest and wife, to the contractor, L. L. Willis, and by him transferred and sold to the lumber company.

Following these facts the plaintiff alleged specifically:

"That thereafter, on the said 14th day of February, 1929, plaintiff entered into an agreement and contract with defendant whereby it was agreed by and between plaintiff and defendant that plaintiff should sell, endorse and deliver to defendant said promissory note and execute and deliver to defendant a written assignment and transfer of said lien for and in consideration of the sum of $2700.00 then and there agreed and promised to be paid by defendant to plaintiff for and in consideration of the endorsement and delivery by plaintiff to defendant of said note and the execution and delivery by plaintiff of an instrument in writing, assigning, transferring and conveying said lien to defendant, said sum to be due and payable on delivery of said note and said written assignment, and further plaintiff would show that, in consummation of said contract and agreement it did on said 14th day of February, 1929, sell, endorse, and deliver to defendant said note and did by written instrument bearing said date duly execute, sell, assign, transfer and convey to defendant said note and said lien and all liens and titles held by it in and to said land, which said written instrument was on said date by plaintiff delivered to defendant.

"That, by reason of said contract and agreement, the endorsement and delivery of said note and the execution and delivery of the assignment, transfer and conveyance of said lien, defendant promised and became bound and liable to pay plaintiff the said sum of $2700.00; that on the delivery of said note and said assignment, as above set out, defendant in partial fulfillment of its' debt and obligation paid to plaintiff the sum of $2280.00, leaving a balance then due by it to plaintiff of $420.00, which said sum of $420.00 remains unpaid and owing to plaintiff, and though often requested defendant has hitherto failed and refused and still now refuses to pay the same or any part thereof, to the plaintiff's damage in the sum of $420.00, together with

interest thereon from the 14th day of February, 1929, at the rate of 6% per annum."

The last paragraph specifically sets forth plaintiff's claim for recovery of the $420. The failure to pay it as there alleged is the default charged to the defendant loan association. Respecting the plaintiff's cause of action and the default charged, the defendant association, after general denial, answers thus:

"For further answer, if required, defendant says that, in connection with the agreement alleged in said petition and at the time the negotiations between plaintiff and defendant for the purchase of the note and lien therein described were being had, it became known that all of the labor and material used in the erection of the dwelling and called for in the mechanics' and materialmen's lien contract, and the plans and specifications referred to therein, had not been fully paid for. That this fact was known to plaintiff at the time of its offer to sell said note and lien to defendant and the matter discussed with defendant's representatives. That as a result of the discussion between the representatives of plaintiff and defendant, and as a part and parcel of the agreement and obligations entered into by plaintiff in connection with the sale of said note and lien, it, *through its representatives, agreed to pay for said unpaid labor and material which amounted in the aggregate to the sum of $420.00 and furnish defendant with proper receipts and releases signed by the respective laborers and materialmen.* (Italics ours.) That defendant then agreed to pay the face value of said note and lien to plaintiff, less the amount of said bills aggregating $420.00, and to pay the balance of the face value of said note and lien when said receipted bills and releases were procured by plaintiff and delivered to defendant as agreed. That accordingly the defendant paid plaintiff the sum of $2280.00, which sum plaintiff accepted and thereupon endorsed the note over to defendant and also executed and delivered a transfer of the lien securing the same, agreeing to wait for the balance of the money until the receipts covering the $420.00 of bills had been procured and delivered. That said bills were in favor of R. P. Crouch and Guy Sherrill; the first in the amount of $325.00. covering labor and material for plumbing installed by said Crouch according to the plans and specifications; the second in the amount of $95.00 covering labor and material for electric wiring installed by said Sherrill according to the plans and specifications. * * *

"That defendant was and has been at all times ready and willing to pay said balance to plaintiff upon the delivery of said receipts and releases, but that notwithstanding its obligation and agreement so to do, plaintiff failed and refused to procure and deliver same. * * *

"That as long as said bills remained unpaid the lien contract was not security for the full face of the note, but only the face value thereof, less the amount necessary to fully pay said bills."

We pass to a consideration of the testimony tendered by the plaintiff to support its declaration of an unconditional contract by which the defendant was to pay the full sum of $2,700 for the note and lien. That at some time prior to the exchange of the assignment and the receipt of the $2,280 there was an unconditional understanding between the plaintiff and the defendant to that effect is recognized in that portion of defendant's answer alleging: " * * * That, *in connection with the agreement alleged in said petition, and at the time the negotiations between plaintiff and defendant for the purchase of the note and lien therein described were being had,* (italics ours) it became known that all of the labor and material * * * had not been paid for."

Upon such allegations and admissions as these it would appear, though we do not so decide, that the defendant would have the right to open and close the argument under such a state of the record. However, we have examined the plaintiff's testimony to support his right of recovery on the unconditional contract alleged and will set out some of the material portions of that testimony:

"I knew at the time I had the conversation with Mr. Bender with reference to the sale of this note that Mr. Crouch or Mr. Sherrill had not received their money. I believe I stated that when I went up to get this check Mr. Harrell went with me, and I am not positive about it but I think he was with me. The check the loan company gave me was for $2280.00. As to what reasons the Building & Loan Association gave me for not paying the full amount of the note, Mr. Bender said there were some bills that had not been paid. As to what my reply was, *we agreed* to let them hold the amount of the bills out, and he held that out to see whether or not the claims were just. That was agreeable with me. * * * Yes, I think Mr. Bender made reference to the provision in the application, that the owner must furnish an affidavit that all outstanding bills, labor bills, had been paid before paying out any money on the loan at the time that we were discussing the payment of the loan. As to what he said about it, I think he wanted an affidavit that all bills were paid. * * *

"Yes, I knew at the time of the conversation of February 14th, that these bills had not been paid. * * * As to when I first learned about these bills not having been paid, it was when he started to give me the check for $2280.00, but I wouldn't agree to take it then, and he held the check a while before I agreed to take it. * * * As to just what Mr. Bender said at that time,

when I refused to accept the check, he said there were some contentions that some bills had not been paid and that he wanted to hold that amount out until it was definitely settled. * * *

"I knew when we got the check for the loan that their bills were deducted."

It nowhere appears in the plaintiff's testimony that they ever procured and presented to the loan company a receipt for the Crouch and Sherrill claims or a release of the lien, if any, which they purport to claim against the property of the owner. It is just a little equivocal as to what the agreement was upon this point. In the main it would seem that the agreement was that the payment of the $420 should be withheld until the association was shown that the Sherrill and Crouch claims were paid and actually released, and in another sense it would seem that the agreement was that the amount should be withheld pending the ascertainment of whether said claims were just. In the plaintiff's testimony the chief witness testified: "We agreed to let them hold the amount of the bills out, and he held that out to see whether or not the claims were just. That was agreeable with me. * * * Yes, I think Mr. Bender made reference to the provision in the application, that the owner must furnish an affidavit that all outstanding bills, labor bills, had been paid before paying out any money on the loan at the time that we were discussing the payment of the loan."

Of course, it is recognized that the point made by the lumber company, is that it is entitled to the payment of the $420 on a showing that neither Sherrill nor Crouch held a claim secured by lien on the owner's property. In the appellee's brief the contention is summed up as follows: "* * * Neither of said subcontractors were entitled to their respective liens to secure the payment of his claim. We respectfully submit that appellee was and is now entitled to have paid to it by appellant the said sum of $420.00."

■ It would seem from this record, as pointed out in our original opinion, that no valid lien exists against the Earnest homestead to secure the payment of the Crouch and Sherrill claims. But with that fact conceded, we have reached the conclusion that this judgment is not supported by the testimony because the testimony offered by the plaintiff itself, and above set out extensively, does not prove that there was, at the time the $420 was retained by the loan association, an unconditional contract between the litigants for the payment of $2,700 on the delivery of the transfer. In fact, the contract involved was something else and rested upon the agreements with reference to the $420, and the nature of that agreement is particularly described in Hunter's testimony itself.

■ If this $420 was to be retained until it was ascertained that these claims were just, or if it was to be retained until the receipts and releases were obtained by the lumber company and tendered to the association, then an entirely different situation presents itself to that upon which recovery is sought. From Hunter's testimony alone it would appear that one or the other of these contingencies was a condition precedent to the lumber company's right to demand the payment of the $420, and until it shows performance in such respect it cannot be said that it has put the association in default of that contract and agreement had at the time the check for $2,280 was accepted. Until such default is shown the right of recovery does not exist. Riverside Lumber Co. v. Lee, 7 Tex. Civ. App. 522, 27 S. W. 161; Smoot & Smoot v. Nelson (Tex. Civ. App.) 11 S.W.(2d) 578; McGreal v. Wilson, 9 Tex. 427.

In the first opinion cited it is said: "It is an elementary rule of law that the allegata and probata must correspond. The plaintiff must recover upon proof of his case as he states it."

Whether or not the claims are just, and whether or not they are secured by a lien, those questions have not been adjudicated or otherwise settled, and an effort to settle the same by this litigation, to which the claimants are not parties, would seem to be a futile thing. We question, without deciding, whether or not a judgment in this cause, merely with the parties at present therein, would be final, without making Crouch, Sherrill, and Earnest parties thereto. We make this suggestion in view of another trial, for it very clearly appears from these pleadings and the briefs that Sherrill and Crouch are not bound by the judgment in this case, and that the affirmance of the judgment below in no way precludes them from immediately instituting a suit against the association, the lumber company, and Earnest. In such a situation there would be the possibility of a double recovery against the loan association, were it here required to pay the amount involved to the lumber company on the judgment here under consideration.

To the extent indicated herein the original opinion will be modified. For the reasons assigned the original judgment of this court is withdrawn, and the judgment of the trial court will be reversed and the cause remanded for another trial.

FUNDERBURK, J., disqualified and not sitting.